Nos. 14-3308 and 15-1939

_____

## UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

_____

KEVIN B. MCCARTHY, et. al.,
Plaintiffs – Counter-Defendants – Appellees

and

LANGSENKAMP FAMILY APOSTOLATE, et. al.,
Counter-Defendants – Appellees

v.

PATRICIA ANN FULLER F/K/A SISTER JOSEPH THERESE et. al.,
Defendants – Counter-Claimants – Appellants

_____

On Appeal from the United States District Court
for the Southern District of Indiana
Indianapolis Division
Case No. 1:08-cv-00994-WTL-DML
The Honorable William T. Lawrence, Jr.

_____

## RESPONSE BRIEF OF APPELLEES KEVIN B. MCCARTHY, ALBERT H. LANGSENKAMP, BVM FOUNDATION, INC., LANGSENKAMP FAMILY APOSTOLATE AND SIGMA MICRO CORPORATION

_____

Michael A. Swift*
MAGINOT MOORE & BECK, LLP
One Indiana Square, Suite 2200
Indianapolis, IN 46204
Tel: (317) 638-2922
maswift@maginot.com

Bradley M. Stohry
REICHEL STOHRY LLP
212 West 10th Street, Suite D-280
Indianapolis, IN 46202
(317) 423-8820
brad@rsindy.com

July 24, 2015

*Counsel of Record for Appellees*

## <u>CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No: <u>Nos. 14-3308 and 15-1939</u>

Short Caption: <u>Kevin B. McCarthy, et. al. v. Patricia Ann Fuller, et. al</u>

     To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

     The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      **[  ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

<u>Kevin B. McCarthy, Albert H. Langsenkamp, BVM Foundation, Inc., Langsenkamp Family Apostolate and Sigma Micro Corporation</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Maginot, Moore & Beck LLP and Reichel Stohry LLP are appearing in this case for Appellees. While not appearing before this Court on this appeal, the following firms appeared for Appellees in earlier proceedings: Ice Miller LLP, Schottenstein Zox and Dunn Co., LPA, Wiley Rein LLP, Meister Seelig & Fein LLP, and Liebmann, Conway, Olejniczak & Jerry, S.C.</u>

(3)  If the party or amicus is a corporation:

     i)  Identify all its parent corporations, if any; and

<u>n/a</u>

     ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

<u>n/a</u>

......................................................................................................................................................

Attorney's Signature: <u>/s/ Michael A. Swift</u>       Date: <u>July 10, 2015</u>

Attorney's Printed Name: <u>Michael A. Swift</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** <u>  X  </u> **No** <u>     </u>

Address: <u>One Indiana Square, Suite 2200, Indianapolis, IN 46204</u>

Phone Number: <u>317-638-2922</u>       Fax Number: <u>317-638-2319</u>

E-Mail Address: <u>maswift@maginot.com</u>

i

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>Nos. 14-3308 and 15-1939</u>

Short Caption: <u>Kevin B. McCarthy, et. al. v. Patricia Ann Fuller, et. al.</u>

      To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

      The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

<u>Kevin B. McCarthy, Albert H. Langsenkamp, BVM Foundation, Inc., Langsenkamp Family Apostolate and Sigma Micro Corporation</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Maginot, Moore & Beck LLP and Reichel Stohry LLP are appearing in this case for Appellees. While not appearing before this Court on this appeal, the following firms appeared for Appellees in earlier proceedings: Ice Miller LLP, Schottenstein Zox and Dunn Co., LPA, Wiley Rein LLP, Meister Seelig & Fein LLP, and Liebmann, Conway, Olejniczak & Jerry, S.C.</u>

(3)  If the party or amicus is a corporation:

      i)  Identify all its parent corporations, if any; and

<u>n/a</u>

      ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

<u>n/a</u>

Attorney's Signature: <u>/s/ Bradley M. Stohry</u>        Date: <u>July 10, 2015</u>

Attorney's Printed Name: <u>Bradley M. Stohry</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** _____ **No** <u>X</u>

Address: <u>212 West 10th Street, Suite D-210, Indianapolis, IN 46202</u>

Phone Number: <u>317-423-8820</u>        Fax Number: <u>317-454-8820</u>

E-Mail Address: <u>brad@rsindy.com</u>

## STATEMENT REGARDING ORAL ARGUMENT

The standard for oral argument is set forth in Fed. R. App. P. 34(a)(2). In relevant part, the Rule states that oral argument is to be allowed unless the panel unanimously agrees that oral argument is unnecessary for any of the following reasons: (a) the appeal is frivolous; (b) the dispositive issue or issues have been authoritatively decided; or (c) the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

In this instance, the arguments that Appellants Patricia Ann Fuller, Paul M. Hartman, and Marilyn A. Cramer advance on appeal have been waived, are frivolous, concern issues that are well settled under Seventh Circuit law, and/or concern issues that are committed to the sound discretion of either the jury or the District Court. As such, the facts and legal arguments involved are adequately presented in the briefs, rendering oral argument unnecessary.

In the event that the Court determines that oral argument is necessary, then Appellees respectfully request that it occur as early as possible, but no later than August 5, 2015. The pendency of this case for almost seven (7) years alone warrants the Court to treat it on an expedited basis.

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT....................................................i

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT...................................................ii

STATEMENT REGARDING ORAL ARGUMENT ....................................................iii

TABLE OF CONTENTS.............................................................................iv

TABLE OF AUTHORITIES ........................................................................vii

JURISDICTIONAL STATEMENT .................................................................. 1

    I.    District Court Jurisdiction ................................................................. 1

    II.    Appellate Court Jurisdiction ............................................................ 2

STATEMENT OF THE ISSUES .................................................................. 3

STATEMENT OF THE CASE..................................................................... 4

    I.    Facts of the Case ........................................................................ 4

    II.    Procedural Background ................................................................. 9

SUMMARY OF THE ARGUMENT ............................................................. 12

ARGUMENT ....................................................................................... 14

    I.    Appellants' Various Undeveloped Arguments Have Been Waived .............. 14

    II.    It Was Proper for the District Court to Grant Appellees' Declaratory and Injunctive Relief ...................................................................... 16

        A.    Standard of Review ......................................................... 17

        B.    Appellants Waived the Right to Appeal the Declaratory Relief Granted by the District Court ................................................. 18

        C.    Appellants Waived the Right to Appeal the Injunctive Relief Granted by the District Court ................................................. 18

        D.    Appellants' Arguments Regarding the District Court's Grant of Injunctive and Declaratory Relief Are Without Merit ....................................... 20

1.   Granting an Injunction Against Further Defamation After a Jury Has Found that such Statements Are Defamatory Is Not Unconstitutional ...... 21

2.   The Injunction Is Proper Because It Merely Precludes Appellants from Repeating the Statements Found to Be Defamatory by the Jury ................ 27

3.   Appellants Cannot Assert that It Was Error for the District Court to Admit Exhibits and Allow Testimony that Appellants Did Not Object to at Trial ........................................................................................................... 28

4.   There is No First Amendment Right to Defame ................................... 28

5.   Appellants' Claims of "Unclean Hands" Are Meritless, Underdeveloped and Should Be Disregarded by the Court ...................................................... 29

III.   The Jury's Verdict Regarding Appellees' Defamation Claims and the Damages Awarded Must Be Upheld ....................................................... 31

A.   Standard of Review ...................................................................... 32

B.   Appellants Waived the Right to Challenge the Damage Award and/or the Jury's Finding of Defamation .............................................................. 32

C.   Appellants' Waived Any Objection to Jury Instruction No. 19 ................ 34

D.   Appellants' Arguments about the Defamation Damage Award and Lack of Evidence of Malice Are Without Merit ............................................... 39

1.   Appellants' Argument Regarding the Lack of Actual Damages Disregards the Clear Law Regarding Defamation Per Se Claims, as well as the Testimony Presented at Trial ................................................... 39

2.   There Was More than Enough Evidence for the Jury to Find Malice ... 41

3.   Hartman Was Not Deprived of the Opportunity to Testify About His Financial Condition ....................................................................... 44

IV.   Appellants' Civil RICO Claims Were Properly Dismissed ........................... 46

A.   Standard of Review ...................................................................... 46

B.   The District Court's Dismissal of Appellants' RICO Claims Was Proper. 47

C.   Even If There Was Error in Dismissing the RICO Claims, such Error Was Harmless ................................................................................... 48

V.   The Sanction Imposed Against Cramer Was Not an Abuse of Discretion ... 49

A.    Standard of Review ....................................................................... 49

B.    The Decision to Impose Sanctions against Cramer and the Amount
Sanctioned Was Not in Error............................................................. 49

CONCLUSION.............................................................................................. 52

## TABLE OF AUTHORITIES

## Cases

*Ackermann v. United States*, 340 U.S. 193 (1950) ..................................................... 37

*Advanced Training Systems v. Caswell Equipment Co.*, 352 N.W.2d 1 (Minn.1984) ........................................................................................................ 22

*Arendt v. Vetta Sports, Inc.*, 99 F.3d 231 (7th Cir.1996) .......................................... 18

*Askanase v. Fatjo,* 130 F.3d 657 (5th Cir. 1997) ....................................................... 16

*Balboa Island Village Inn. Inc. v. Lemen*, 40 Cal.4th 1141 (Cal. 2007) ............. 22, 25

*Bank of America, N.A. v. Veluchamy*, 643 F.3d 185 (7th Cir. 2011) ................... 15, 48

*Beauharnais v. Illinois*, 343 U.S. 250 (1952) ............................................................ 24

*Bruso v United Airlines Inc.*, 239 F.3d 848 (7th Cir. 2001) ....................................... 17

*Chambers v. Scutieri*, 2013 WL 1337935 (N.J. Super. Ct. App. Div. April 4, 2013). 23

*Cochran v. Indianapolis Newspapers, Inc.*, 372 N.E.2d 1211 (Ind. App. 1978) ........ 43

*Consumer Products Research & Design, Inc. v. Jensen*, 572 F.3d 436 (7th Cir. 2009) ........................................................................................................ 34

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) .............. 29

*e360 Insight v. Spamhaus Project*, 500 F.3d 594 (7th Cir. 2007) ............................. 23

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) .......................................... 17

*Gagan v. American Cablevision, Inc.*, 77 F.3d 951 (7th Cir. 1996) .......................... 15

*Galvan v. Norberg*, 678 F.3d 581 (7th Cir. 2012) ..................................................... 32

*Gamboa v. Velez*, 457 F.3d 703 (7th Cir. 2006) ......................................................... 47

*Glasscock v. Corliss*, 823 N.E.2d 748 (Ind. App. 2005) ............................................ 39

*GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615 (7th Cir. 1995) ............. 2

*Gonzalez v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025 (7th Cir. 1998) ..................... 20

*Harrington v. DeVito*, 656 F.2d 264 (7th Cir.1981) ................................................... 17

*Hawkins v. Evans*, 64 F.3d 543 (10th Cir.1995)..........................................................34

*Hendrickson v. Cooper*, 589 F.3d 887 (7th Cir. 2009) ..................................................4

*Hill v. Petrotech Resources Corp.*, 325 S.W.3d 302 (Ky. 2010)............................ 23, 26

*In re Indiana Newspapers Inc.*, 963 N.E.2d 534 (Ind.App. 2012)..............................29

*Journal-Gazette Co. v. Bandido's Inc.*, 712 N.E.2d 446 (Ind. 1999) .........................41

*Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485 (7th Cir.1989) ......................49

*Kotsilieris v. Chalmers*, 966 F.2d 1181 (7th Cir. 1992)...............................................49

*Lightspeed Media Corp. v. Smith*, 761 F.3d 699 (7th Cir. 2014) ...............................51

*Lothschuetz v. Carpenter*, 898 F.2d 1200 (6th Cir. 1990)...........................................23

*Maher v. City of Chicago*, 547 F.3d 817 (7th Cir. 2008).......................................32, 33

*Maxon v. Ottawa Pub. Co.*, 929 N.E.2d 666 (Ill. App. 2010).....................................29

*McCarthy v. Fuller*, 714 F.3d 971 (7th Cir. 2013) ........................................................6

*Medical Informatics Engineering, Inc. v. Orthopaedics Northeast, P.C.*, 458
    F.Supp.2d 716 (N.D. Ind. 2006)......................................................................38, 41

*Menier v. Thompson*, 85 F.3d 631 (7th Cir. 1996).........................................................4

*Midwest Gas Servs., Inc. v. Ind. Gas Co.*, 317 F.3d 703 (7th Cir. 2003) ...................46

*Moriarty ex rel. Local Union No. 727 v. Svec*, 429 F.3d 710 (7th Cir. 2005)............49

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ...............................................41

*O'Brien v. University Community Tenants Union, Inc.* 327 N.E.2d 753 (Ohio 1975)
    ...............................................................................................................................22

*Obsidian Finance Group, LLC v. Cox*, 740 F.3d 1284 (9th Cir. 2014)......................29

*People v. Heinrich*, 470 N.E.2d 966 (Ill. 1984) ..........................................................24

*Pereira v. Farace*, 413 F.3d 330 (2nd Cir. 2004).......................................................32

*Production Specialties Group, Inc. v. Minsor Systems, Inc.*, 513 F.3d 695 (7th Cir.
    2008) ......................................................................................................................37

*Puffer v. Allstate Ins. Co.*, 675 F.3d 709 (7th Cir. 2012)......................................18, 30

*Robert Suris General Contractor Corp. v. New Metropolitan Federal Sav. & Loan Ass'n*, 873 F.2d 1401 (11th Cir. 1989) ....................................................... 48

*Snyder v. Phelps*, ___ U.S. ___, 131 S.Ct. 1207 (2011) .............................................. 38

*Stafford v. Puro*, 63 F.3d 1436 (7th Cir. 1995) ............................................. 32

*Trzcinski v. American Cas. Co.*, 953 F.2d 307 (7th Cir. 1992) ............................. 32

*U.S. v. Reyes*, 307 F.3d 451 (6th Cir. 2002) ................................................ 34

*United States v. Berkowitz*, 927 F.2d 1376 (7th Cir. 1991) ................................. 30, 31

*United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991) ...................................... 16, 30

*United States v. Garcia*, 754 F.3d 460 (7th Cir. 2014) ............................... 48

*United States v. Griffin*, 84 F.3d 912 (7th Cir. 1996) .................................... 37

*United States v. White*, 443 F.3d 582 (7th Cir. 2006) ................................. 28

*United States v. Zannino,* 895 F.2d 1 (1st Cir.1990) ........................................ 15, 48

*Wagner Equipment Co. v. Wood*, 893 F.Supp.2d 1157 (D.N.M. 2012) ..................... 22

*Wienco, Inc. v. Katahn Associates, Inc.*, 965 F.2d 565 (7th Cir. 1992) ..................... 20

*Woodward v. Corr. Med. Servs. of Ill., Inc.,* 368 F.3d 917 (7th Cir. 2004) ............... 32

## Statutes

15 U.S.C. § 1125 ................................................................................... 1

17 U.S.C. § 101 .................................................................................... 1

28 U.S.C. § 1291 ................................................................................... 2

28 U.S.C. § 1331 ................................................................................... 1

28 U.S.C. § 1332 ................................................................................... 2

28 U.S.C. § 1338 ................................................................................... 2

28 U.S.C. § 1927 ................................................................................. 51

28 U.S.C. § 2201 ................................................................................... 1

720 ILCS 5(l) ..................................................................................... 24

Ind. Code § 34-51-3-4 ........................................................................ 10

Ind. Code § 34-51-3-6 ........................................................................ 40

Ind. Code § 34-7-7-1 .......................................................................... 21

## Rules

Fed. R. App. P. 32(a)(7)(b) ................................................................ 14

Fed. R. App. P. 34(a)(2) ....................................................................... iii

Fed. R. App. P. 4 .................................................................................. 2

Fed. R. Civ. P. 50 .................................................................. 13, 33, 34

Fed. R. Civ. P. 51(d) .......................................................................... 37

Fed. R. Civ. P. 54(d ........................................................................... 11

Fed. R. Civ. P. 59 ............................................................................... 33

Fed. R. Civ. P. 60(b) ........................................................................... 34

S.D. Ind. Rule 7-1 .............................................................................. 18

## Other Authorities

David S. Ardia, *Freedom of Speech, Defamation and Injunctions*, William & Mary
     Law Review, 55 Wm. & Mary L. Rev. 1 (2013) ...................................... 26

Mark E. Steiner, *The Lawyer as Peacemaker: Law and Community in Abraham
     Lincoln's Slander Cases*, Journal of the Abraham Lincoln Association, Volume
     16, Issue 2 (Summer 1995) ................................................................ 24

Restatement (Second) of Torts § 623 ...................................................... 24

## JURISDICTIONAL STATEMENT

### I.    District Court Jurisdiction

The jurisdictional statement filed by Appellants Patricia Ann Fuller ("Fuller"), Paul M. Hartman ("Hartman"), and Marilyn A. Cramer ("Cramer") is not complete or correct.[1] Most notably, Appellants use their jurisdictional statement as an opportunity to challenge the District Court's subject matter jurisdiction. Appellants argue that the judgment must be vacated and the case dismissed for lack of subject matter jurisdiction, though Appellants do not make such an argument in the argument section of the brief. This argument and request for relief is misplaced in the jurisdictional statement. Moreover, the assertion that the District Court lacked subject matter jurisdiction is nothing short of frivolous.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, since this action arises in part under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Lanham Act, 15 U.S.C. § 1125, et. seq., and the Copyright Act, 17 U.S.C. § 101, et seq. Specifically, Appellants sought declaratory judgment of non-infringement of trademarks and copyrights. (APX141-142.[2]) "In declaratory judgment cases, the well-pleaded complaint rule dictates that jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the

---

[1] Fuller, Hartman, and Cramer will be referred to herein collectively as "Appellants."

[2] The following abbreviations are utilized throughout the brief for citations to the record: "APX_____" refers to Appellants' Appendix (Dkt. 72 – 76.); "SUPP_____" refers to Appellees' supplemental Appendix that is filed herewith; "B_____" refers to Appellants' Brief (Dkt. 77-1); "D_____" refers to the District Court's docket numbers (where the citation is shown as D____:____, the number(s) following the colon is the page number(s)); "T_____" refers to the trial transcript; and "E_____" refers to trial exhibits.

declaratory judgment defendant." *GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995). Here, the presumed suit (as well as the actual suit) included claims of infringement under the Lanham Act and the Copyright Act. As federal courts have jurisdiction over claims brought under both the Lanham Act and Copyright Act, subject matter jurisdiction clearly existed. *See* 28 U.S.C. § 1338.

The District Court also had federal diversity jurisdiction under 28 U.S.C. § 1332, as: (a) the parties are citizens of different states – Appellees Kevin B. McCarthy ("McCarthy") and Albert H. Langsenkamp ("Langsenkamp") are citizens of Indiana, Appellee BVM Foundation, Inc. ("BVM") is a corporation organized under the laws of the state of Indiana with its principal place of business in Indiana,[3] and Appellants Fuller and Hartman are citizens of the Ohio; and (b) the amount in controversy exceeds $75,000.00. (APX127.)

## II.     Appellate Court Jurisdiction

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and Fed. R. App. P. 4, as this is an appeal from a final judgment which resolved all claims as to all parties. The District Court entered its Amended Judgment on September 18, 2014 (APX570-573), which Appellants challenged by filing their Notice of Appeal on October 17, 2014. Later, the District Court entered its Entry on Motion for Attorneys' Fees on March 20, 2015. (APX602-625), which Appellants challenged by filing their Notice of Appeal on April 17, 2015.

---

[3] McCarthy, Langsenkamp, BVM, Langsenkamp Family Apostolate, and Sigma Micro Corporation will be referred to herein collectively as "Appellees."

## STATEMENT OF THE ISSUES

1.     Whether Appellants waived the right to appeal the declaratory relief granted by the District Court where Appellants: (a) failed to file a response to Appellees' Motion for Declaratory Judgment; and (b) filed a late response to Appellees' Motion for Permanent Injunction that was not accepted by the District Court.

2.     If the Court determines that Appellants have not waived the right to appeal the declaratory relief granted by the District Court, whether the District Court abused its discretion in: (a) granting Appellees declaratory judgment after the jury conclusively found that Appellees did not infringe any rights of Fuller; and (b) granting Appellees an injunction against further publication of the statements that were determined to be defamatory at trial by the jury.

3.     Whether Appellants waived: (a) the right to appeal the amount of the damage award and/or the jury's finding of defamation where Appellants failed to file a timely Rule 50(b) motion or Rule 59 motion for a new trial; and (b) the right to challenge Jury Instruction No. 19 where they failed to adhere to the District Court's deadlines and/or raise their new concerns about the jury instruction at trial.

4.     If the Court determines that Appellants have not waived the right to appeal the amount of damage award and/or the jury's finding of defamation, whether the District Court's decision to uphold the jury's verdict and damage award was an abuse of discretion.

5.     Whether the District Court erred in dismissing Appellants' RICO and Indiana Corrupt Business Influence Act claims.

6. Whether the District Court abused its discretion when imposing monetary sanctions against Cramer for her failure to take measures that a reasonable attorney would have taken.

## STATEMENT OF THE CASE

### I. Facts of the Case

Appellants' statement of the case misrepresents the facts, is full of argument, and extends entire paragraphs without including any citations to the record. Appellants also fail to include proper citations to the record throughout the argument section of the brief, all in violation of the Rules.[4] *See Menier v. Thompson*, 85 F.3d 631 (7th Cir. 1996). In response to Appellants' incorrect and improper summary of the facts, Appellees set forth the facts of this case by reference to the evidence presented at trial, which is to be considered "in the light most favorable to the jury's verdict." *Hendrickson v. Cooper*, 589 F.3d 887, 889 (7th Cir. 2009).

### A. The Devotion

This dispute relates to a Catholic devotion to the Virgin Mary under the title "Our Lady of America" (the "Devotion"). The Devotion involves certain messages received from the Virgin Mary by a nun named Sister Ephrem (a/k/a Mildred Neuzil) who was a member of the Congregation of the Sisters of the Precious Blood. (E179.) Fuller had been a nun with Sister Ephrem and then, later in life, had lived with her

---

[4] Moreover, instead of citing to the trial record, Appellants repeatedly cite to pre-trial deposition testimony of witnesses who also provided live testimony at trial. (See, for example, B9.)

4

for many years, until Sister Ephrem died in 2000. (E179, T2020, T2047.) After Sister Ephrem's death, Fuller continued promoting the Devotion. (T2047-2048.)

### B.    *Collaboration between Appellees and Fuller*

McCarthy, Langsenkamp and BVM began collaborating with Fuller to promote the Devotion in late 2005. (T249.) This collaboration began after Fuller and her associates asked Bishop Richard Garcia to work to obtain the commitment of McCarthy to promote the Devotion. (D738-2:17-32, D738-3:71-73.) At the request of Bishop Garcia and Bishop David Ricken, McCarthy made a solemn commitment to get the Devotion going. (T241-242.) After making the solemn commitment to the two Bishops, McCarthy enlisted the assistance of Langsenkamp and others. (T253.)

Langsenkamp and McCarthy first met with Fuller on December 16, 2005. (T2778-2779.) At that meeting, Fuller freely and permanently gave McCarthy a statue of Our Lady of America that was previously displayed near Latrobe, Pennsylvania (the "Latrobe Statue"). (T246-248, T2782-2784.) This fact is confirmed by the testimony of Bishop Ricken, as well as the subsequent admonishment letter that he issued. (SUPP41-42, T2176-2177, T2182, T2184-2185.)

Following this initial meeting, the parties collaborated on their devotional efforts for approximately two years. (T2796-2797.) Unbeknownst to Appellees, Fuller was dismissed from religious vows in 1982 for incorrigible disobedience. (E255.) Appellees testified that they would not have collaborated with Fuller, or had any other involvement with her, had they known that she was misrepresenting her status as a nun. (T253-254.) While Fuller admitted at trial that she knew that she was dismissed from vows (T2025), she continues, to this day, to hold herself out as a nun.

In fact, in their brief, Appellants assert that "Fuller, now in her 70's, has lived as a Catholic nun since the age of 17."[5] (B25.)

When the parties were collaborating, Appellees made many efforts to increase awareness of the Devotion and "get the Devotion going." Included among those efforts were many processions and visitations of the Latrobe Statue at many different dioceses, the creation of a new statue (the "BVM Statue"), which was taken to many more dioceses and the 2006 Annual Meeting of the United States Conference of Catholic Bishops, the reworking of a website, making the messages available for download on the website, and the creation of a newsletter. (T254, T284-292, T2785-2788, T2809-2810.)

As a result of these efforts, the Devotion was becoming more known, especially amongst the Bishops, who had no significant involvement in the devotion since Archbishop Paul Leibold's (Sister Ephrem's spiritual advisor) death in 1972. (T2807-2808.) At the request of McCarthy, Archbishop Raymond Burke, now Cardinal Burke, one of the preeminent canon law experts in the world, studied the Devotion and issued a favorable statement that was sent to all Bishops throughout the United States. (E179, T2807-2808.) Even Fuller admitted during cross examination that the statement was very good for the Devotion. (T3885.) Moreover, the evidence demonstrates that Fuller supported all of these efforts, as prior to the involvement of

---

[5] The Catholic Church has determined that Fuller is not a nun, as noted by this Court in the earlier interlocutory appeal: "The Roman Catholic Church has determined that Fuller has not been a member of any Catholic religious order since 1983 at the latest; that she is not a nun or a sister and does not live in a convent, cloister, or other religious property owned or used by the Church; and that these rulings by the Church may not be questioned in the litigation." *McCarthy v. Fuller*, 714 F.3d 971, 979 (7th Cir. 2013).

McCarthy, Fuller stated that the devotion was "in limbo." (SUPP43-59, E238, E244, E392, E394.)

At Fuller's request, McCarthy helped Fuller obtain certain legal assistance. (SUPP60-68, T365-368.) Such assistance was needed with regard to a will, setting up certain non-profit organizations, establishing a shrine and working towards the beatification of Sister Ephrem. (E313.) Fuller's legal counsel helped her cash in certain stock for the purpose of using the proceeds to promote the Devotion. (T1575-1576, T1581-T1582, D712-5:10.) The evidence demonstrates that Fuller initiated and was fully in agreement with all of these efforts. (T1562.)

### C.     *Gifts and Donations from Fuller to Appellees*

When they were collaborating, Fuller gave McCarthy, Langsenkamp, BVM Foundation, and others numerous gifts, including gifts of devotional items, such as the Latrobe Statue, a crucifix, a plaque, and medallions, as well as monetary gifts. (T527-531, T535-536, T2370-2372, T2829.) Fuller's own letters demonstrate that she intended for these items and money to be gifts. (SUPP69-71, E405, E1080, E1081.) Fuller also made monetary donations to BVM, which amounts were used to promote BVM's causes, including the Devotion. (T1724-1727.) Again, Fuller's own letters clearly demonstrate that these payments were intended as donations. (SUPP72-73, E1081.) Moreover, during cross-examination, Fuller admitted that she wanted to make the donations to BVM. (T2269.)

### D.     *The Split Between Appellees and Fuller*

Appellees and Fuller stopped working together in late 2007. (T2832.) McCarthy was distancing himself from Fuller in late October 2007. (T543-545.) While

McCarthy had made every effort to work with Fuller (SUPP122-123), McCarthy eventually determined that Fuller would not really cooperate on any effort to advance the Devotion in the Church and that he needed to focus his time on completing his theology degree in Rome. (E1200, T543-545.) However, the final straw for McCarthy came after Fuller attempted to put items in his home without his knowledge. (T551-552.) For Langsenkamp, the final blow to the relationship and his ability to continue to work with Fuller occurred when Bishop Blair emphatically told him that Fuller was not a nun at the beginning of December 2007. (T2832-2835, E60.) Following this meeting, Fuller demanded that Appellees stop promoting the Devotion and return items that she had previously given them. (T554-555.) Appellees continued to promote the Devotion on their own after they received a legal opinion that the relevant devotional materials that they were using were in the public domain and did not violate any rights of Fuller. (T2843-2845, T4484, T5671-5672.)

### E.    *Appellants' Campaign to Defame Appellees*

After Appellees refused to cease promoting the Devotion or return items that Fuller gave to them, Fuller began to defame them by accusing them of theft and other wrongdoing. (T2832-2833; E227, E622, E1040, E1041.) Appellees brought suit against Fuller and others to address this defamation, but, at the request of Bishop Ricken, dropped the suit out of Christian charity. (T2192.)

Instead of stopping the defamation, Fuller obtained the assistance of Hartman, who upped the defamation considerably by filing numerous complaints with police departments and other governmental authorities. (E74, E1043, E1044.) When no police or governmental authority would take any action, Hartman began writing

defamatory letters and emails to various people associated with the Catholic Church. (APP784-785; SUPP114-119, E1, E3, E123, E125, E442, E1199.) Hartman also began making threats to Appellees and others that had worked with Fuller, such as Alan Kershaw. (SUPP120-121, E47.) Hartman began taking this action against McCarthy and Langsenkamp despite the fact that he had never even spoken with them until the depositions were taken in this case. (APX651.)

Hartman expanded the defamation when he started an anonymous blog – ourladyofamerica.blogspot.com – for the purpose of attacking Appellees. (APX677, T2684, APX729-730.) On his blog, Hartman made repeated defamatory allegations against Appellees, including allegations of theft, bribery, and other criminal conduct. (SUPP74-111.)

In order to address Appellants' defamation, obtain some clarity regarding Fuller's claim of ownership of the intellectual property rights related to the Devotion, and address other issues, Appellees brought the current lawsuit.

## II.    Procedural Background

These consolidated appeals arise from an action that was originally initiated by Appellees nearly seven years ago, on July 25, 2008. (D1.) In their Amended Complaint, Appellees asserted various claims, including claims against both Appellants for defamation and claims against Fuller for fraud and deception relating to her misrepresentations about her status as a nun. (APX126-143.) In addition, Appellees sought a declaratory judgment that their use of certain devotional materials did not infringe any copyrights or trademarks of Fuller. Appellants countersued Appellees, as well as numerous additional counterclaim defendants,

asserting various claims, including claims for defamation, theft, conversion, fraud, conspiracy, RICO violations, copyright infringement and trademark infringement. (APX300-383.)

Prior to trial, many of Appellants' claims were dismissed or summarily decided in Appellees' favor. (See APX393-408, APX463-469, APX475-478). Most notably, the District Court granted Appellees judgment as a matter of law with regard to Fuller's claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Indiana Corrupt Business Act. (APX421.)

This matter went to a jury trial beginning on January 21, 2014, and concluding on March 7, 2014. After the seven-week trial, the jury found that both Fuller and Hartman defamed Appellees and awarded Appellees both compensatory and punitive damages with regard to Hartman's defamation. (APX487-490.) McCarthy was awarded $100,000.00 in compensatory damages and $50,000.00 in punitive damages and Langsenkamp was awarded $50,000.00 in compensatory damages and $1,000,000.00 in punitive damages. (*Id.*) Per Indiana Code § 34-51-3-4, the punitive damages awarded to Langsenkamp were decreased to $150,000.00 by the District Court. (APX548-549.) Fuller was awarded no damages with regard to any of her claims. (APX497-536.) In particular, the jury determined that Appellees did not infringe any trademark or copyrights of Fuller. (APX521-527) Moreover, the jury determined that Appellees were not liable to Fuller for theft, conversion, fraud, defamation, or any other claim. (APX497-536.)

Following the verdict, the District Court entered its Entry Regarding Rule 50 Motions and Other Matters on March 19, 2014. (APX538-549.) The District Court denied Hartman's motion for judgment as a matter of law with regard to Appellees' defamation claims because there was "ample evidence in the record to support both McCarthy's and Langsenkamp's defamation claims against Hartman." (APX546-547.) Further, the District Court granted Appellees' motion for judgment as a matter of law with regard to Fuller's unjust enrichment claims, as the jury verdict form had not been fully completed with regard to this claim. (APX547-548.)

After the District Court entered Judgment (APX550-551) and the parties made their post-judgment filings, the District Court entered its Entry on Post-Trial Motions on September 18, 2014. (APX552-568.) In that Entry, the District Court: (1) denied Appellants' Motion for Attorneys' Fees (APX552-555); (2) denied Hartman's Motion to Alter or Amend the Judgment (APX555-562); (3) granted Appellees' Motion for Injunction Against Further Defamation (APX562); (4) granted Appellees' Motion for Declaratory Judgment of Noninfringement (*Id.*); and (5) denied Appellants' Rule 60 motion. (APX564-567.) On the same date, the District Court also entered an Amended Judgment consistent with its Entry on Post-Trial Motions (APX570-573) and granted Appellees' timely filed Bill of Costs (APX574). The Bill of Costs was never challenged by Appellants within the time allowed under Rule 54(d)(1) of the Federal Rules of Civil Procedure. (APX602-603.)

Appellants filed their first Notice of Appeal on October 17, 2014 (D862), in which they challenge numerous orders from the District Court, including the various

orders mentioned above, as well as many other ancillary orders and decisions. Following the filing of the Notice of Appeal, the District Court issued an Entry on Motion for Attorneys' Fees on March 20, 2015 (APX602-625). In that Entry, the District Court awarded Appellees attorneys' fees relating to Fuller's copyright claims and issued sanctions against Fuller and her counsel. On April 17, 2015, Appellants filed their second Notice of Appeal in which they purport to challenge the Entry on Motion for Attorneys' Fees. (D979.)

## SUMMARY OF THE ARGUMENT

The District Court gave Appellants every opportunity to get their act straight so that they would get their day in court. Appellants ultimately got their day in court and the result did not go in their favor. Having overwhelmingly lost at trial, Appellants now cast themselves as victims of bias from the District Court and misconduct by Appellees. In support, Appellants advance numerous waived, perfunctory, and frivolous arguments. None of their arguments remotely support the relief they request.

While Appellants make numerous allegations and arguments in their brief, most of them are made in the most cursory fashion and are not based in reality. Though Appellants identified eleven main issues in their Statement of the Issues (as well as twenty-one additional sub-issues), Appellants only address four of those issues with anything that could be considered actual argument. In many instances, Appellants simply inserted a brief paragraph along with the following statement: "The page limitation prevents more detailed discussion of this issue."  With regard to

12

the issues that are addressed in this or other cursory fashion, any arguments that Appellants could raise regarding those issues should be deemed waived.

The main argument advanced by Appellants relates to the District Court's grant of declaratory judgment and injunctive relief after the jury rendered its verdict. However, Appellants waived any arguments that they had regarding the equitable relief when they failed to timely respond to Appellees' motions requesting such relief. Even absent such waiver, the District Court's grant of equitable relief was not an abuse of discretion. In particular, the injunction granted against the further publication of the defamatory statements considered at trial is not an improper prior restraint. Appellants' other cursory arguments against the District Court's grant of equitable relief are without any basis in law or fact.

Appellants' arguments regarding the evidence of damages and defamation are equally unpersuasive. As an initial matter, Appellants waived the right to challenge whether the damages awarded and/or the jury's finding of defamation are supported by the evidence presented at trial when Appellants failed to comply with the requirements of Rule 50 of the Federal Rules of Civil Procedure. Appellants also waived the right to challenge the jury instruction that defined defamation when Appellants: (a) failed to adhere to deadlines; and (b) failed to raise their purported objection to the jury instruction at trial. Even if Appellants had not waived these challenges, their arguments ignore the law and do not come remotely close to satisfying the heavy burden of challenging a jury's verdict.

Appellants' arguments regarding the District Court's dismissal of Appellants' RICO and Indiana Corrupt Business Influence Act claims are presented in the most cursory fashion. As Appellants have failed to make any real effort to present a cogent argument regarding the District Court's conclusion that Appellants did not plead the continuity requirement of a RICO claim in their Amended Complaint, Appellants' skeletal argument on this issue should be disregarded by the Court. Even if the District Court had committed error, such error would be considered harmless in view of the jury's verdict rejecting Fuller's claims of theft, conspiracy, and other wrongdoing.

Similarly flawed are Appellants' arguments regarding the sanctions imposed against Cramer. Appellants offer no counter to the reasoned analysis of the District Court that supported the sanctions. Instead, Appellants blindly assert that the District Court was biased and argue that the sanctions cannot stand. The facts outlined in the District Court's order clearly demonstrate that Cramer's conduct was objectively unreasonable and worthy of sanctions.

## ARGUMENT

### I.   Appellants' Various Undeveloped Arguments Have Been Waived

Throughout their brief, Appellants take the shotgun approach to this litigation, asserting countless errors and arguments, often without supporting them with any facts or cogent analysis.[6] The Court has repeatedly cautioned against exactly this sort

---

[6] As an initial matter, Appellees note that, despite the fact that Appellants certified that the brief contained only 13,875 words, the actual word count of the brief (excluding the excludable portions referenced in Fed. R. App. P. 32(a)(7)(b)(iii)) is 14,241 words, which violates Fed. R. App. P. 32(a)(7)(b)(i). Moreover, when the Court issued its Brief Deficiency Letter (Dkt. 67)

14

of tactic. *See Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 955 (7th Cir. 1996) ("Losers in a trial can go hunting for relief on appeal with a rifle or a shotgun. The rifle is better. As we have noted, the shotgun approach may hit the target with something but it runs the risk of obscuring significant issues by dilution."). Undeterred by this sound advice, Appellants list a multitude arguments and allegations, most of which are not even briefed.

With regard to many of the issues listed in Appellants' brief, Appellants simply listed the issue and included one or two short conclusory paragraphs. In particular, Appellants failed to include any real discussion of the issues that they identified as Issues IV, VI, VII, VIII, X and XI in their Statement of the Issues.[7] Instead, Appellants repeatedly included brief paragraphs along with the following statement under those issue headings: "The page limitation prevents more detailed discussion of this issue." (B48, B50, B51, B55.) Because Appellants have not actually briefed any of these issues, they have been waived. *Bank of America, N.A. v. Veluchamy*, 643 F.3d 185, 190 (7th Cir. 2011) (citation omitted) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work,

---

regarding the initial brief filed by Appellants (Dkt 66), the Court identified issues that Appellants needed to address, but specifically indicated that "**The substance of the document must not be changed.**" (Dkt. 67 (emphasis in original).) Despite this clear instruction, many arguments in the original brief were edited in the brief that was later filed (Dkt. 77-1). (Compare, for example, Dkt. 67, pg. 47 to Dkt. 77-1, pg. 48-50). Finally, the many different appendices filed by Appellants (Dkt. 58-60; Dkt. 72-76; Dkt. 78-79; Dkt. 85-86) include many documents that were not referenced in their brief, are not properly part of the record, and should not be considered by the Court on appeal.

[7] With regard to Issue XI, Appellants provided some narrative under that heading in the argument section of the brief. However, the narrative makes no sense and does not match the issue identified in the heading.

create the ossature for the argument, and put flesh on its bones."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").[8]

Moreover, Appellants failed to address many of the issues that were previously identified in their Statement of the Issues on Appeal. (Dkt 9-3, pg. 4-5.) In particular, Appellants failed to address their assertions that the District Court erred in dismissing certain claims for defamation, copyright infringement, trade dress infringement, and trademark infringement. In addition, Appellants failed to address their claim that they were appealing the verdict with regard to Fuller's copyright, trademark, fraud, theft, conversion, cyberpiracy, and breach of contract claims. As Appellants failed to brief these issues, they have been waived on appeal. *See, e.g., Askanase v. Fatjo*, 130 F.3d 657, 668 (5th Cir. 1997) ("All issues not briefed are waived.").

## II.  It Was Proper for the District Court to Grant Appellees' Declaratory and Injunctive Relief

After the jury rendered its verdict that Appellees did not infringe any trademarks or copyrights of Fuller and that McCarthy and Langsenkamp had been

---

[8] One issue that Appellees must briefly address is Appellants' argument that the District Court improperly dismissed Fuller's unjust enrichment claim *sua sponte* (Issue V), as the argument blatantly misrepresents the facts. At the conclusion of Appellants' case-in-chief, Appellees filed their Motion for Judgment as Matter of Law (D809) and related brief (D810), in which they clearly sought judgment with regard to Fuller's unjust enrichment claims. (D810:7-8.) This motion was taken under advisement by the District Court. (APX546.) When this claim was submitted to the jury, it put a slash through the question on the verdict form. (APX547.) As the jury did not actually answer "Yes" or "No" on the jury verdict form, the District Court granted Appellees' Motion for Judgment as a Matter of Law with regard to the unjust enrichment claim. (APX546-548.) Accordingly, it is frivolous for Appellants to argue that Fuller's unjust enrichment claim was dismissed *sua sponte*.

defamed by Appellants, Appellees filed their Motion for Declaratory Judgment (D840) in which they asked the District Court to enter declaratory judgment that Appellees' use and distribution of devotional items and other promotional activities did not infringe any copyrights or trademarks asserted by Fuller. Further, Appellees filed their Motion for Permanent Injunction (D839) seeking injunctive relief against further defamation by Appellants. After Appellants failed to file timely responses to these motions, they were summarily granted by the District Court. (APX562.) The District Court's rulings on these motions should be upheld, as the Court's grant of equitable relief was not an abuse of its discretion.

### A.     *Standard of Review*

Both injunctions and declaratory judgments are forms of equitable relief, the grant of which is reviewed for abuse of discretion. *See Bruso v United Airlines Inc.*, 239 F.3d 848, 861 (7th Cir. 2001) ("We review a court's decision with respect to equitable relief for an abuse of discretion."); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion."). "Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found." *Harrington v. DeVito*, 656 F.2d 264, 269 (7th Cir.1981).

**B.**  **Appellants Waived the Right to Appeal the Declaratory Relief Granted by the District Court**

Despite the passage of five months between Appellees' filing of the Motion for Declaratory Judgment and the District Court's ruling on the motion, Appellants never filed any sort of response to the motion. As a result, Appellees' motion was summarily granted by the District Court pursuant to Rule 7-1(c)(4) of the District Court's Local Rules, which provides that "[t]he court may summarily rule on a motion if an opposing party does not file a response within the deadline."

Appellants' failure to respond to Appellees' Motion for Declaratory Judgment is fatal to Appellees' ability to raise arguments regarding the declaratory relief that was granted by the District Court on appeal, as "[i]t is a well-established rule that arguments not raised to the district court are waived on appeal." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). In particular, when a party has the opportunity to file a response to a motion, but fails to raise an argument in opposition, it waives the right to raise that argument on appeal. *See Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 237 (7th Cir.1996). Thus, Appellants cannot challenge the declaratory judgment that was granted.

**C.**  **Appellants Waived the Right to Appeal the Injunctive Relief Granted by the District Court**

While Appellants did file a response to Appellees' Motion for Permanent Injunction (D851), it was filed late and exceeded the page limitation. (APX562.)

Consequently, the District Court did not consider the late response.[9] In addition, the District Court explicitly found that Appellants had waived the right to raise certain First Amendment arguments in response to Appellees' request for injunctive relief. Specifically, the District Court stated that it "recognizes that there are First Amendment implications to enjoining speech; however, [Appellants] forfeited the opportunity to raise that issue by missing their response deadline." (APX562.)

In view of Appellants' extensive history of disregarding deadlines, the District Court's determination that Appellants waived the right to raise arguments against the requested injunctive relief is not an abuse of discretion. In the interest of brevity, Appellees will not attempt to list all of the deadlines that were missed by Appellants. However, it is not an exaggeration to say that Appellants missed the majority of the relevant deadlines in this case. Appellants' failures in this regard, as well as the repeated sanctions and warnings that they received from the District Court, are well documented. This history is most thoroughly addressed in the District Court's Entry on Motion for Attorneys' Fees (APX612-615) and Entry on Post-Trial Motions (APX554).[10] Notwithstanding the District Court's extreme patience and repeated warnings (see SUPP7, SUPP10, SUPP21, APX465, SUPP30-32), Appellants continued to miss deadlines and were ultimately sanctioned when they failed to heed the District Court's warnings (see SUPP12, APX480, APX543-544). After all the

---

[9] Appellants assert that their failure to follow the rule on page limitation is the only basis for the District Court's decision to not consider their brief. (B21.) This is false. The brief was primarily not considered because it was late. (APX562.)

[10] Appellees also outlined the many warnings and sanctions in their Response in Opposition to Motion for Leave to File Amici Brief. (Dkt. 82, pg. 4-8.)

warnings and even after being previously sanctioned for missing other deadlines, Appellants still missed the deadline for filing a response to Appellees' Motion for Injunction.

Courts have the right and obligation to enforce deadlines, particularly when a party has repeatedly disregarded previous deadlines and has been warned of the consequences of further failures. *See Wienco, Inc. v. Katahn Associates, Inc.*, 965 F.2d 565, 566 (7th Cir. 1992) (denial of extension request and grant of summary judgment was not an abuse of discretion in view of the defendants' "years of 'consistent, wilful and recalcitrant' failure … to meet the court's deadlines"); *Gonzalez v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025, 1030-31 (7th Cir. 1998) (no abuse of discretion where district court refused to consider the plaintiff's late response to motion for summary judgment where plaintiff's counsel repeatedly missed deadlines).

In view of Appellants' years of consistent, willful and recalcitrant failure to meet deadlines and, as well as the repeated warnings/sanctions from the District Court, it was entirely appropriate for the District Court to disregard Appellants' late response and find that the arguments raised therein were waived. Accordingly, the District Court did not abuse its discretion when it ruled that Appellants had waived any potential arguments against a permanent injunction.

### D.    *Appellants' Arguments Regarding the District Court's Grant of Injunctive and Declaratory Relief Are Without Merit*

Even if the Court does consider Appellants' arguments regarding the injunctive and declaratory relief granted by the District Court, those arguments are

without merit. Simply put, it was not an abuse of discretion for the District Court to grant Appellees injunctive and declaratory relief.

> 1. *Granting an Injunction Against Further Defamation After a Jury Has Found that such Statements Are Defamatory Is Not Unconstitutional*

Appellants argue that the injunction violates their constitutional rights.[11] However, the injunction granted by the District Court merely prevents Appellants from continuing to publish the statements that the jury found to be defamatory. Such narrowly tailored injunctive relief, which merely prohibits a party from repeating statements that have been found to be defamatory by a jury, does not constitute an impermissible prior restraint or otherwise violate the free speech rights of Appellants.

The issue of whether an injunction against speech found to be defamatory is proper is not squarely addressed by Appellants in their brief. Instead, this issue is addressed by the *amici curiae* brief filed by Professors Erwin Chererinsky and Lyrissa Barnett Lidsky, The Electronic Frontier Foundation and Association of American Publishers, Inc. (collectively, "Amici"). The Amici assert that all injunctions against

---

[11] In addition to attacking the constitutionality of the injunctive relief, Appellants also make the assertion that the injunctive relief violates Indiana's Anti-SLAPP statute, Ind. Code § 34-7-7-1, et. seq. This statute has no applicability to this case. The statute allows a defendant to file a special motion to dismiss a complaint filed against the defendant based on the grounds that the act complained of is "in furtherance of [the defendant's] right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue or an issue of public interest." Ind. Code § 34-7-7-1(a). No such motion was filed in this case. Rather, Appellants first raised the issue of the anti-SLAPP statute in response to a post-trial motion filed by Appellees. (D851.)

defamation, even after a final judicial finding of defamation, should be considered unconstitutional prior restraints.

Most courts that have recently considered the issue have found that an injunction against publication of statements found to be defamatory is not unconstitutional. While the Amici highlight recent cases from the Supreme Court of Texas that came to the opposite conclusion (based on its interpretation of the Texas Constitution, not the U.S. Constitution), the Supreme Court of Texas is in the minority with regard to recent decisions on this issue.

"[C]ourts repeatedly have concluded that, once a judge or jury has made a final determination that the speech at issue is defamatory, an injunction prohibiting the defendant from repeating the defamatory speech does not constitute a prohibited prior restraint on speech." *Wagner Equipment Co. v. Wood*, 893 F.Supp.2d 1157 (D.N.M. 2012). In such cases, "an injunction issued following a trial that determined that the defendant defamed the plaintiff that does no more than prohibit the defendant from repeating the defamation, is not a prior restraint and does not offend the First Amendment." *Balboa Island Village Inn. Inc. v. Lemen*, 40 Cal.4th 1141, 1148 (Cal. 2007); *see also O'Brien v. University Community Tenants Union, Inc.* 327 N.E.2d 753, 755 (Ohio 1975) ("Once speech has judicially been found libelous, if all the requirements for injunctive relief are met, an injunction for restraint of continued publication of that same speech may be proper."); *Advanced Training Systems v. Caswell Equipment Co.*, 352 N.W.2d 1 (Minn.1984) ("[T]he injunction below, limited as it is to material found either libelous or disparaging after a full jury trial, is not

unconstitutional and may stand."); *Hill v. Petrotech Resources Corp.*, 325 S.W.3d 302, 308 (Ky. 2010) ("[o]nce a judge or jury has made a final determination that the speech at issue is defamatory, the speech determined to be false may be enjoined."); *Chambers v. Scutieri*, 2013 WL 1337935 at ** 13-14 (N.J. Super. Ct. App. Div. April 4, 2013) ("We hold that where the trial court has conducted a trial and has concluded the defendant's statements were defamatory, the court may consider the issuance of a permanent injunction to prevent the defendant from continuing his or her course of conduct in the future."); *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206, (6th Cir. 1990) (Wellford, J., concurring in part and dissenting in part) (permitting an injunction, but limiting the "application of such injunction to the statements which have been found in this and prior proceedings to be false and libelous").

Neither the Seventh Circuit nor the Supreme Court has considered the permissibility of an injunction against speech that has been found to be defamatory.[12] However, the Supreme Court has observed that the prevention and punishment of certain classes of speech, including defamation do not raise constitutional problems:

> There are certain well defined and narrowly limited classes of speech the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words -- those which, by their very utterance, inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from

---

[12] The Court alluded to the issue in *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 606 (7th Cir. 2007), when it vacated an injunction as written, but indicated that it "express[ed] no opinion on the constitutional validity of any new, narrowed injunctive relief the district court might think appropriate after considering all of the relevant factors."

them is clearly outweighed by the social interest in order
and morality.

*Beauharnais v. Illinois*, 343 U.S. 250, 255-257 (1952). A permanent injunction focused

this way not only restrains the defamer from the specific adjudicated statements, but

properly "chills" any propensity to continue to defame.[13]

Moreover, the "modern rule" advocated for by Appellees is also consistent with

the Restatement of Torts. In particular, the Restatement provides that injunctive

relief is favored "[w]hen it has been formally determined by a court that a statement

is both defamatory and untrue and the defendant persists in continuing to publish

it." Restatement (Second) of Torts § 623, special note at 326.

The policy reasons for allowing an injunction after speech has been determined

to be defamatory are strong.  Most notably, damages are often an inadequate remedy

in a defamation action, especially if the defendant is judgment proof.  The Supreme

Court of California addressed this issue when it stated as follows:

> [A plaintiff] harmed by a continuing pattern of defamation
> would be required to bring a succession of lawsuits if an
> award of damages was insufficient to deter the defendant
> from continuing the tortuous behavior. This could occur if
> the defendant either was so impecunious as to be
> "judgment proof," or so wealthy as to be willing to pay any
> resulting judgments. Thus, a judgment for money damages
> will not always give the [plaintiff] effective relief from a
> continuing pattern of defamation.

---

[13] Originally, "slander suits were intended more to restore or repair reputation than to collect
damages."  Mark E. Steiner, *The Lawyer as Peacemaker: Law and Community in Abraham
Lincoln's Slander Cases*, Journal of the Abraham Lincoln Association, Volume 16, Issue 2
(Summer 1995).  In fact, the State of Illinois still criminalizes defamation as a constitutional
restraint on certain types of speech.  *See* 720 ILCS 5(l); *People v. Heinrich*, 470 N.E.2d 966
(Ill. 1984).

*Balboa Island Village Inn.*, 40 Cal.4th at 1158).

The case for injunctive relief is also all the more compelling given how easy the Internet makes it for someone to spread defamation to a vast audience and continue to cause harm indefinitely. The internet enables defamers (such as Hartman) to post a defamatory statement on a website or blog with little effort and no cost. The defamatory statement will then be available for anyone to see, potentially in perpetuity. In order to stop the continuing harm caused by the ongoing defamation, people who have been defamed (such as Appellees) must be able to obtain injunctive relief. Otherwise, they can be left without a palatable option for protecting their reputations from the damage caused by ongoing defamation.

These concerns are particularly relevant in this instance. Even after the jury found Appellants had committed defamation *per se* on March 7, 2014 (APX487-490)*,* Hartman continued to publish the defamatory statements on his blog for another six months.  The defamation did not stop and the blog was not taken down until after the injunction issued on September 18, 2014. (APX571-572.) In fact, after the injunction issued, Hartman still refused to stop defaming Appellees and they were forced to file a motion for contempt. (D858.) The District Court denied the motion, as Google had already taken down the blog after Appellees provided it with notice of the injunction. (D892:2.) However, the District Court warned Hartman that "additional violations will not be taken lightly." *Id.*

Under the Amici approach, Appellees would essentially be without a remedy for Hartman's defamation, as Hartman has already indicated that he will declare

bankruptcy if the judgement stands. (D838:20.) In other words, after seven years of litigation, Appellees would be in a position where they would obtain no damages from Hartman (since he is purportedly judgment proof), while Hartman could continue to defame Appellees. Appellees would be left with the unpalatable option of again spending untold time and money filing and prosecuting new lawsuits for the same Defamatory Statements already addressed by the jury. However, as Hartman is purportedly judgment proof and injunctive relief is unavailable under the law advanced by the Amici, such lawsuits would be pointless. Hartman would be able to continue to defame Appellees and damage their reputations with impunity. That is not justice.[14]

Because of these concerns, "a trend is emerging within both state and federal courts that permits injunctions if the speech in question was adjudged to be defamatory." David S. Ardia, *Freedom of Speech, Defamation and Injunctions*, William & Mary Law Review, 55 Wm. & Mary L. Rev. 1, 51 (2013). The Seventh Circuit should join the many courts that have adopted this "modern rule" and hold that once a judge or jury has made a final determination that the speech at issue is defamatory, such defamatory speech may be enjoined. Assuming that the modern rule is adopted, the question becomes whether the injunction granted in this instance was proper. As shown below, it was proper.

---

[14] As Langsenkamp testified at trial, the whole purpose of the lawsuit was "to stop the defamation." (T2903.) The goal of the lawsuit was not to obtain damages; Appellees' "just wanted to stop it." (T2903-2904.)

2.   *The Injunction Is Proper Because It Merely Precludes Appellants from Repeating the Statements Found to Be Defamatory by the Jury*

In determining whether Appellants were liable for defamation, the jury considered whether the eight specific statements identified in the jury verdict form (collectively, the "Defamatory Statements") were defamatory. (SUPP37.) While the jury was not asked to identify which of the Defamatory Statements it specifically found to be defamatory, the jury clearly and emphatically found that both Hartman and Fuller were liable to McCarthy and Langsenkamp for defamation *per se* and defamation *per quod.* (APX487-490.) The fact that the jury awarded over a million dollars in damages against Hartman for defamation *per se* should resolve all doubts regarding the extent of the jury's findings regarding the Defamatory Statements. (*Id.*)

In view of the foregoing, the District Court enjoined Appellants from publishing the specific Defamatory Statements that were addressed in the jury verdict form.[15] (D:856:2-3.) As Hartman's blog contained little more than the Defamatory Statements and similar statements, he was ordered to take it down. In view of the law outlined above, this narrowly tailored injunction was constitutionally proper and the District Court's decision to grant it did not constitute an abuse of discretion.

---

[15] Appellants argue that the injunction prohibits them from making statements about the verdicts in Fuller's favor. This is untrue. Appellants are simply prohibited from continuing to publish the Defamatory Statements or similar statements that mean the same.

3.    *Appellants Cannot Assert that It Was Error for the District Court to Admit Exhibits and Allow Testimony that Appellants Did Not Object to at Trial*

Appellants argue that it was error for the District Court to allow Appellees to introduce complaints to law enforcement and communications with Catholic clergy as exhibits at trial to support Appellees' claims of defamation. In particular, Appellants reference Exhibits 1043, 1044, 74, 1, 123, 1199, 442, 4, 2, and 3. While Appellants now assert that it was error for these exhibits to be admitted, each of these exhibits was admitted at trial without any objection by Appellants. (See T2106 (E1043), T647-648 (E1044), T2104 (E74), T663 (E1), T666-667 (E123), T668 (E1199), T674 (E442), T676 (E4), APX667 (E2), T678 (E3).) Moreover, Appellants never objected to testimony about police reports and/or communications with clergy or asserted that these reports/communications were privileged. Accordingly, Appellants cannot, for the first time on appeal, assert that it was error for the District Court to admit exhibits and allow testimony to which Appellants never objected at trial. *See United States v. White*, 443 F.3d 582, 591 – 592 (7th Cir. 2006) (challenge to admission of exhibit waived on appeal where its admission was not objected to at trial).

4.    *There is No First Amendment Right to Defame*

Appellants assert that their defamatory communications and blog posts are protected speech. In particular, Appellants make the rather curious argument that Appellees' defamation claims should have been summarily dismissed because

Hartman's blog posts involve matters of public concern.[16] This argument ignores the fact that Hartman has been found liable for defamation. In other words, even if Hartman was blogging regarding matters of "public concern," that fact would not give him a license to freely defame Appellees, as "it is well settled that there is no first-amendment right to defame." *Maxon v. Ottawa Pub. Co.*, 929 N.E.2d 666, 675 (Ill. App. 2010) (*citing Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985)). This is true even in matters of public concern. *See In re Indiana Newspapers Inc.*, 963 N.E.2d 534, 550 (Ind. App. 2012) (where the court acknowledges that "Indiana has adopted an 'actual malice' standard in defamation for both private and public plaintiffs in matters of public concern.").[17] As a result, Appellants' arguments that their defamation should be permitted as "protected speech" are simply frivolous.

5.    *Appellants' Claims of "Unclean Hands" Are Meritless, Underdeveloped and Should Be Disregarded by the Court*

Appellants assert that the equitable relief that was granted should be reversed because of alleged wrongdoing by Appellees and their counsel. Simply put, these allegations of wrongdoing are false. Moreover, Appellants have provided little more than a laundry list of alleged wrongdoings with no evidence that supports their

---

[16] Appellants also argue that the injunction violates the Religious Freedom Restoration Act. Appellants provide no explanation regarding how that statute is applicable.

[17] Appellants' reliance of *Obsidian Finance Group, LLC v. Cox*, 740 F.3d 1284 (9th Cir. 2014) is curious. That case does not stand for the proposition that there can be no defamation if the statement at issue involves a matter of public concern, as Appellants suggest. Rather, that case holds that, under Oregon law, in matters of public concern, the plaintiffs must demonstrate that the defendant acted negligently. *Id.* at 1292.

claims. Such baseless, underdeveloped allegations cannot be the basis for a finding of unclean hands.

As the Court has observed, "[w]e repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991). "[E]ven arguments that have been raised may still be waived on appeal if they are underdeveloped, conclusory, or unsupported by law." *Puffer*, 675 F.3d at 718. Stated differently, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim." *Dunkel*, 927 F.2d at 956.

At the District Court, Appellants repeatedly accused Appellees and their counsel of all sorts of unsubstantiated wrongdoing. However, as these allegations are false, Appellants never produced an iota of credible evidence that would support them. In fact, that is exactly what the District Court stated when it observed that Appellants provided "only a list of twenty acts of alleged misconduct, without any citation to the record or explanation of how each action demonstrates" that Appellees and their counsel were guilty of misconduct. (APX554.) Since "[u]nsupported and undeveloped arguments ... are considered waived", the District Court found that Appellants had waived the right to raise their unclean hands arguments. (APX555.) Because these allegations of "unclean hands" were not properly developed at the District Court, they are waived on appeal. *Puffer v.*, 675 F.3d at 718 (7th Cir. 2012).

Even if these arguments were not waived at the District Court, they still have not been properly developed by Appellants on appeal. Appellants have not supported

any of their baseless allegations with record citations or other evidence, nor have they properly supported their argument that their allegations of wrongdoing justify prohibiting Appellees from obtaining equitable relief. Instead, Appellants blindly and falsely accuse Appellees of various sorts of misconduct, including manufacturing evidence, offering perjured testimony, withholding evidence and hiring goons to assault witnesses.

It is Appellants' obligation to outline the facts, support the facts with evidence from the record, develop their argument, and support their argument with pertinent authority. *Berkowitz*, 927 F.2d at 1384. Simply stated, Appellants have not met and cannot meet this obligation. Just as the "unclean hands" argument failed in the District Court, it also fails on appeal.[18]

## III.   The Jury's Verdict Regarding Appellees' Defamation Claims and the Damages Awarded Must Be Upheld

Appellants embarked on a campaign to defame Appellees by sending various defamatory emails and letters and creating a blog – ourladyofamerica.blogspot.com – in which there were over 200 postings accusing Appellees, among others, of various criminal actions, including theft of hundreds of thousands of dollars, bribery of clergy, and other immoral acts. (SUPP74-113.) Because these serious allegations of wrongdoing had no basis in fact, the jury rightfully determined that Appellants' conduct constituted defamation *per se* and awarded McCarthy and Langsenkamp

---

[18] While Appellant's many allegations of wrongdoing have not been properly raised and supported (and need not be further addressed), for the record, Appellees state that all of the allegations are blatantly false.

both compensatory and punitive damages. Appellants have utterly failed to provide any basis to reverse the jury verdict.

### A.    *Standard of Review*

"The right to trial by jury has long been an important protection in the civil law of this country." *Pereira v. Farace*, 413 F.3d 330, 337 (2nd Cir. 2004). Because of the importance of this right, the Court "review[s] the evidence in the light most favorable to the verdict." *Galvan v. Norberg*, 678 F.3d 581, 588 (7th Cir. 2012). The Court reviews a district court's "decision to uphold the size of a damage award for an abuse of discretion." *Stafford v. Puro*, 63 F.3d 1436, 1444 (7th Cir. 1995). As a result, the Court generally "will not set aside a jury verdict if a reasonable basis exists in the record to support the verdict." *Trzcinski v. American Cas. Co.*, 953 F.2d 307, 315 (7th Cir. 1992). Stated differently, Appellants have "a heavy burden in [challenging the verdict]: [they] must demonstrate that no legally sufficient evidentiary basis existed for the jury's verdict." *Maher v. City of Chicago*, 547 F.3d 817, 824 (7th Cir. 2008) (citations omitted). The Court is "obliged to leave the judgment undisturbed unless [Appellants] can show that 'no rational jury could have brought in a verdict against [them].'" *Id.*

### B.    *Appellants Waived the Right to Challenge the Damage Award and/or the Jury's Finding of Defamation*

Appellants argue that the evidence that was presented at trial does not support the damages awarded to Appellees and/or the jury's finding of defamation. These arguments are not properly before the Court because Appellants waived the right to

challenge the sufficiency of the evidence on appeal when they failed to comply with the requirements of Rule 50 of the Federal Rules of Civil Procedure.

"A failure to file a pre-judgment motion under Rule 50(a) prevents this court from reviewing the sufficiency of a jury verdict." *Maher v. City of Chicago*, 547 F.3d at 824. In addition, "[a] party must also file a post-verdict Rule 50(b) motion to preserve a sufficiency argument." *Id.* The "failure to bring a pre-verdict motion for judgment as a matter of law under Rule 50(a) or a post-verdict motion under Rule 50(b) dooms [an appellant's] challenge to the sufficiency of the evidence." *Id.*

Here, Appellants neither filed a written Rule 50(a) motion, nor identified an oral Rule 50(a) motion in their brief. Moreover, Appellants failed to file any sort of Rule 50(b) motion after the jury returned its verdict. After judgment was entered by the District Court on March 19, 2014 (APX550-551), Appellants had until April 16, 2014 to file a timely Rule 50(b) motion or Rule 59 motion for a new trial. On the deadlines, Appellants filed a motion that they titled "Defendants-Counterclaimants' Motion, Pursuant to Rule 59(e), Federal Rules of Civil Procedure, to Alter and Amend Judgment" (D838; the "Motion to Amend Judgment"), in which they attacked the propriety of the damage award, but not the issue of whether defamation was established. However, as the unambiguous language of the Motion to Amend Judgment clearly states, this was neither a Rule 50(b) motion nor a Rule 59 motion for a new trial, which is brought under Rule 59(a)(1). Rather, it was a motion to alter or amend the judgment, which was brought under Rule 59(e). As a result, Appellants

clearly failed to file either a timely Rule 50(b) motion or a Rule 59 motion for a new trial.

After the deadline for filing a Rule 50(b) motion had passed, Appellants filed a Motion for Leave to File a Longer Brief in Support of Their Motion for a New Trial Pursuant to Rule 59(b) (D844). While that Motion for Leave was granted by the District Court, because the Motion for a New Trial was filed outside of the deadline for filing a Rule 59 motion, it was treated by the District Court as a Rule 60(b) motion. (APX564.) Accordingly, this motion was not a timely Rule 50(b) motion or a timely Rule 59 motion for a new trial, as required to preserve sufficiency of the evidence arguments for appeal. *See Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir.1995) ("[A]n appeal from the denial of a Rule 60(b) motion does not itself preserve for appellate review the underlying judgment."); *U.S. v. Reyes*, 307 F.3d 451, 456 (6th Cir. 2002) ("As a general rule, appeal from the denial of a Rule 60(b) motion does not encompass review of the underlying judgment.")

Appellants' failure to follow Rule 50 is fatal to their ability to make any sort of sufficiency of the evidence arguments on appeal. *See Consumer Products Research & Design, Inc. v. Jensen*, 572 F.3d 436, 437 (7th Cir. 2009) ("A party's failure to comply with Rule 50(b) forecloses any challenge to the sufficiency of the evidence on appeal."). As a result, Appellants' challenges to whether the evidence supports the damage award and the jury's finding of defamation are waived.

### C.    *Appellants' Waived Any Objection to Jury Instruction No. 19*

There is also a separate waiver issue with regard to Appellants' argument that Jury Instruction No. 19 improperly described the elements of defamation. As a result

of Appellants' inability to adhere to the District Court's deadlines, the District Court properly held that Appellants waived any right to assert objections to the jury instructions. In addition, Appellants were given ample opportunity to provide suggestions regarding the jury instructions, but failed to identify any concern regarding the manner in which defamation was defined in Jury Instruction No. 19. Accordingly, Appellants cannot now object to Jury Instruction No. 19 on appeal.

The District Court found that Appellants waived their right to object to jury instructions when Appellants repeatedly failed to submit proposed instructions to the District Court. Appellants' failure in this regard was described in the Entry Regarding Rule 50 Motions and Other Matters:

> The original deadline to file proposed jury instructions was April 10, 2012; when [Appellants] missed that deadline, the Court extended it to May 15, 2012 … the Court once against extended the deadline for proposed jury instructions to July 16, 2012, and admonished [Appellants] that the failure to meet that deadline would constitute forfeiture of the right to object to any aspect of the Court's final instructions. [Appellants] filed two motions to extend that deadline; those motions ultimately were denied by the magistrate judge, and [Appellants] did not object to that ruling. Nor did [Appellants] move for relief from that ruling at any time, despite the fact that the trial of this cause did not commence until well over a year later.

(APX543 (citation omitted).) In view of Appellants' history of repeatedly missing deadlines, as well as the many warnings that were given by the District Court (addressed *supra*), the District Court's determination that Appellants had waived the right to object to the jury instructions was not an abuse of discretion.

Despite the fact that Appellants were deemed to have waived any objections to the jury instructions, the District Court did allow Appellants' counsel to fully

participate in formal and informal discussions regarding the jury instructions that were held before and during trial. (APX544.) During these discussions, every jury instruction was discussed and each party's counsel was given ample opportunity to make suggestions regarding proposed changes. (T5357-5398.) In many instances, changes were made based upon Appellants' counsel's suggestions or requests. (T5364.) In fact, with regard to Jury Instruction No. 19, the transcript reflects that changes were made at the request of Appellants' counsel:

> THE COURT: Okay. Nineteen also follows the thread that we talked about previously off the record, in reading 19 in conjunction to 51.
>
> MS. CRAMER [Appellants' counsel]: I'm sorry?
>
> THE COURT: They are the same instruction.
>
> MS. THIELMEYER [District Court Clerk]: Ms. Cramer, you had raised the issue about whether that last sentence was correct; and I think you had a valid point.
>
> MS. CRAMER: So that's now taken out?
>
> MS. THIELMEYER: It has been deleted.
>
> …
>
> THE COURT: Let's do this. I want to go through these first. Then I've got a list of those things that I think you had wanted to talk about, and we'll include that one. So let's take care of 19 and 51, where essentially we have accepted Ms. Cramer's suggestion. So those are all right; is that correct?

(T5363-5364.) In other words, Appellants' counsel requested a revision to Jury Instruction No. 19, which was made by the District Court. Despite the fact that Jury Instruction No. 19 (and the corresponding Jury Instruction No. 51, which related to Fuller's defamation claims against Appellees) was revised exactly as requested by

Appellants, they now complain that the instruction was improper.[19] In view of Appellants' explicit approval of Jury Instruction No. 19, their new objection to this instruction has clearly been waived. *See United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) ("The right to object to jury instructions on appeal is waived if the record illustrates that the defendant approved of the instructions at issue.").

Thus, Appellants waived the right to challenge Jury Instruction No. 19 on two separate bases – Appellants waived the right to object to the instruction when they (1) failed to adhere to the District Court's deadlines; and (2) failed to raise any issue with the manner in which defamation was defined in Jury Instruction No. 19 during jury instruction conferences (in fact, Jury Instruction No. 19 was revised exactly as requested by Appellants' counsel). Accordingly, Appellants cannot now object to Jury Instruction No. 19 on appeal.

Appellees note that "Fed. R. Civ. P. 51(d)(2) permits a court to consider a plain error in the jury instructions affecting substantial rights that has not been preserved as required by Fed. R. Civ. P. 51(d)(1)." *Production Specialties Group, Inc. v. Minsor Systems, Inc.*, 513 F.3d 695, 700 (7th Cir. 2008). In order for an appellant to establish plain error, "there must be (1) error, (2) that is plain, and (3) that affects substantial

---

[19] Appellants made the choice not to object to the manner in which defamation was defined in Jury Instruction No. 19. Possibly, Appellants liked the definition for Fuller's defamation claim, as the same definition was included in Jury Instruction No. 51. (SUPP38, SUPP40.) Regardless, Appellants made a conscious litigation decision. They cannot now claim that their own litigation decision to not request a different definition was in error. *See Ackermann v. United States*, 340 U.S. 193, 198 (1950) (ruling that strategic decisions made during course of litigation, that upon reconsideration appear to be erroneous, does not provide basis for relief).

rights, and (4) the court must be convinced that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citations omitted.) Essentially, an appellant needs to demonstrate "that the outcome probably would have been different without the error." *Id.* (citations omitted.)

There is no evidence of error with regard to Jury Instruction No. 19, as the instruction accurately listed the elements of defamation. Under Indiana law, proof of actual malice is only required "when a public figure brings a defamation action or when a private individual brings a defamation action over a matter of public or general concern. In the case of a private individual bringing a defamation action over a matter of private concern, only negligence with regard to the truth or falsity of the statement is required." *Medical Informatics Engineering, Inc. v. Orthopaedics Northeast, P.C.*, 458 F.Supp.2d 716, 722, fn. 3 (N.D. Ind. 2006). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, ___ U.S. ___, 131 S.Ct. 1207 (2011) (citation omitted).

Here, McCarthy and Langsenkamp are private individuals. Moreover, the Defamatory Statements relate to purely private matters, particularly allegations of theft and other wrongdoing that were alleged to have been committed by two private individuals (McCarthy and Langsenkamp) against another private individual (Fuller). As a result, the negligence standard outlined in Jury Instruction No. 19 was proper. Moreover, even if there was an issue with the instruction, Appellants have

presented no evidence that such issue was outcome determinative. In fact, as discussed *infra*, there was more than sufficient evidence of Appellants' actual malice that was presented at trial that would support a finding of defamation, regardless of whether a negligence or actual malice standard was applied. Accordingly, Appellants have not and cannot demonstrate the Jury Instruction No. 19 was clear error.

### D.    *Appellants' Arguments about the Defamation Damage Award and Lack of Evidence of Malice Are Without Merit*

#### 1.    *Appellants' Argument Regarding the Lack of Actual Damages Disregards the Clear Law Regarding Defamation Per Se Claims, as well as the Testimony Presented at Trial*

Appellants argue that the damages awarded as a result of Hartman's defamation cannot stand because of the purported lack of evidence of compensatory damages suffered by McCarthy and Langsenkamp. This argument ignores the clear law regarding defamation *per se* claims. "In cases of defamation *per se*, the jury may presume damages because '[t]he law presumes the plaintiff's reputation has been damaged, and the jury may award a substantial sum for this presumed harm, even without proof of actual harm.'" *Glasscock v. Corliss*, 823 N.E.2d 748, 757 (Ind. App. 2005) (citations omitted). The relevant law is clearly reflected in Jury Instruction 21. (SUPP39.) In view of this instruction, which was not objected to by Appellants, the jury was more than justified in awarding substantial damages, regardless of whether they believed that actual damages had been proven.

Even if this was not a case of defamation *per se*, Appellees did provide ample evidence of actual damage caused by Hartman's defamation. In particular, McCarthy testified that the defamation affected his relationships with people in the Church,

disrupted his education in Rome, and interfered with his ability to make a living. (APX870.) Similarly, Langsenkamp testified that the allegations of theft made by Hartman, including theft of gold coins, potentially cost Langsenkamp business, including the business of the U.S. Mint, which would have resulted in a personal gain to Langsenkamp over the life of the contract of $15,000,000.00 – $20,000,00.00. (APX828-829.) The sorts of criminal allegations that Hartman made against Langsenkamp would obviously have an impact on anyone that was considering doing business with Langsenkamp. As McCarthy noted, the types of vile allegations that Hartman made against him naturally "erodes people's perception of you, their idea, their image that they have of me, and it affects them." (APX872.)

As demonstrated by the testimony of McCarthy and Langsenkamp, there was certainly real damage caused by Hartman's defamation. In fact, given the long-term nature of Hartman's defamation (he was continually defaming Appellees for nearly six years) and the seriousness and offensiveness of the accusations that he was making against Appellees, Hartman, quite frankly, got off light. Six years of the types of allegations and embarrassment that Hartman subjected Appellees was worth a lot more than the $350,000.00 awarded, much of which would be paid to the State of Indiana pursuant to Indiana Code § 34-51-3-6. Regardless, the jury was more than justified in awarding Appellees a substantial sum for the presumed harm caused by Hartman, as well as punitive damages to penalize Hartman.

> 2.   *There Was More than Enough Evidence for the Jury to Find Malice*

Appellants' argument that there was no evidence of malice presented at trial is also baseless. The applicable standard is different depending upon whether the plaintiff is private figure or a public figure and whether the statement at issue involves matters of public concern. When a private individual brings a defamation action over a matter of private concern, the standard is negligence. *Medical Informatics Engineering*, 458 F.Supp.2d at 722, fn. 3. However, when a public individual brings a defamation action or a private individual brings a defamation action regarding a matter of public concern, the standard is actual malice. *Id.*

As discussed *supra*, negligence was the appropriate standard with regard to Appellees' defamation claims. However, even if the actual malice standard was applicable, there was more than sufficient evidence presented at trial for the jury to determine that malice was present.

Actual malice "exists when the defendant publishes a defamatory statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Journal-Gazette Co. v. Bandido's Inc.*, 712 N.E.2d 446, 456 (Ind. 1999) (*citing New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). With regard to the statements of Fuller, she undoubtedly had knowledge of the falsity of her various Defamatory Statements, including the statements that Appellees stole property from her. She was a party to the gifts that she gave to Appellees and even admitted that many of the items she claimed were stolen were indeed gifts. (T2069-T2071, T2076-T2077, T2906, T2210-2211.) For example, despite the fact that Appellants alleged

41

that the $50,000.00 Fuller gave to Bridget Kaufmann was part of the money that Appellees allegedly swindled from Fuller, Fuller admitted at trial that the money was a gift to the Kaufmans and "had nothing to do with McCarthy." (T2071, SUPP69, T2211.) Fuller's trial testimony also contradicts Appellants' repeated statement that Fuller was forced to spend approximately $100,000.00 on advertisements for Our Lady of America in Catholic newspapers, as Fuller admitted on cross-examination that she wanted to pay for the ads. (T2267.) Moreover, as the jury unambiguously found that Appellees did not steal any property from Fuller (APX497-536), it naturally follows that there was sufficient evidence for the jury to conclude that Fuller's Defamatory Statements to the contrary were made with knowledge of their falsity.

As to the Defamatory Statements made by Hartman, the evidence demonstrates that Hartman embarked on a campaign to discredit and defame Appellees by sending various defamatory emails and creating a blog for the sole purpose of attacking Appellees. (SUPP74-113.) Hartman undertook this activity despite the fact that he had never even met or spoken with Appellees at the time he began accusing them of criminal conduct. (APX651-654.) Rather, Hartman simply began sending communications and publishing a blog that attacked Appellees for all sorts of fictional wrongs based on a meeting he had with Fuller.

With regard to certain Defamatory Statements, Hartman continued to publish such Defamatory Statement on his blog long after they were emphatically proven to be false. For example, Hartman repeatedly stated that McCarthy suggested that Jim

Whitta's name be forged on a quit claim deed. (SUPP76-79, SUPP103-110.) This suggestion allegedly occurred at meeting at which six people were present – Langsenkamp, McCarthy, Fuller and the three Weston Hurd attorneys, John Farnan, Karen Davey and Dana Rose. (SUPP76-79.) When the Weston Hurd attorneys were deposed, they emphatically stated that no one ever suggested that any sort of deed be forged. (T1571, T1604, T1664.) In that regard, Farnan testified as follows: "Do I remember anyone suggesting that they forge his name?  Absolutely not. I never remember anyone in this project at any time suggesting that any document be forged for any purpose nor if it was ever suggested would I ever tolerate that, because it's not only illegal, it's unethical." (T1571.) Despite the fact that Hartman was present at these depositions (APX691), which occurred two years before trial, his defamatory blog posts remained on his site until after the injunction was granted post-trial. Based on this testimony, Hartman would have to have entertained serious doubts as to the truth of the blog posts that contained this Defamatory Statement. The fact that Hartman chose to leave his defamatory accusations up, despite this unambiguous testimony to the contrary, demonstrates that he published the Defamatory Statements with reckless disregard of whether they were false or not.

Moreover, in considering whether a party knew a statement was false or had serious doubts as to the truth of the statement, it is appropriate to consider the speaker's attitude or ill will toward subject of the statement. *Cochran v. Indianapolis Newspapers, Inc.*, 372 N.E.2d 1211, 1220 (Ind. App. 1978). In this instance, the tone of Hartman's approximately 200 blog posts (see, for example, SUPP74-113), as well

as Hartman's references to Appellees as "[t]he minions, who are foot soldiers of the fallen angel, the father of all lies" (SUPP74-75), demonstrates that Hartman harbors significant ill will towards Appellees. This obvious ill will is further evidence of Hartman's malice in publishing the Defamatory Statements. Accordingly, even if actual malice was the proper standard, there was more than enough evidence of malice to support the jury's verdict.

### 3. Hartman Was Not Deprived of the Opportunity to Testify About His Financial Condition

Appellants argue that it was error for the District Court to prevent Hartman from testifying about his financial situation because such evidence is relevant and admissible regarding the determination of punitive damages. However, the District Court never prevented Hartman from testifying regarding his financial situation. In fact, Hartman did testify regarding his financial situation when his counsel had him on cross-examination during Appellees' case-in-chief:

> Q And you testified that this became -- this case has been all consuming. Have you been able to do any other work and get any hourly rate at all since you began working on this case?
>
> A No.
>
> MR. SWIFT: Object, relevance.
>
> MS. CRAMER: Your Honor, it goes to his motivations.
>
> THE COURT: Overruled.
>
> THE WITNESS: Not only have I not been able to earn income because of the suit that was brought by these people in bad faith, I believe. But also, it's impacted my ability to do things around my home, my barn, with my animals,

44

> because I live in a rural area. I have horses. I raise -- grow
> hay and harvest it. So it's had a pretty significant impact
> on my ability to do anything but address the issues in this
> case.

(T2683.) Following this exchange, Appellants' counsel asked no follow-up questions

regarding Hartman's financial situation. For example, Appellants' counsel failed to

ask Hartman about his savings, property, pension(s), other financial resources,

mortgages, debts, etc.

Fifteen days later, during Appellants' case-in-chief, Hartman was back on the

stand and Appellants' counsel inquired as to the impact that this lawsuit has had on

Hartman, personally. In that instance, Appellees' counsel objected on relevance

grounds and the Court sustained the objection. (APX736-737.) As explained by the

District Court that objection was sustained because:

> At no time did counsel suggest that the purpose of her
> questioning was to explore Hartman's financial situation
> or explain that she intended to elicit testimony that would
> be relevant to the punitive damages claim against him. Far
> from making the offer of proof required by Fed. R. Evid.
> 103(a), counsel did not even articulate the potential
> relevance of her line of questioning, saying only "[i]n
> defending the litigation, the person would have impact or
> effect" and suggesting that the fact that he had spent
> money on the litigation "would reveal information
> concerning motivation." A party cannot offer testimony for
> one reason and later complain that it should have been
> admitted for another reason. To do so defeats the purpose
> of requiring an offer of proof . . . The fact that Hartman did
> not offer evidence of his financial situation falls squarely on
> his counsel's shoulders.

(APX560-561 (internal citation omitted).)

Following the attempted questioning about the impact of the lawsuit,

Appellants' counsel failed to follow-up with any questions regarding Hartman's

financial situation or his ability to pay a judgment. Accordingly, the District Court did not prevent Hartman from testifying about his financial situation. Rather, Hartman's counsel simply failed to ask the right questions, explaining her intention to elicit a certain category of answers, and/or make an offer of proof).

## IV. Appellants' Civil RICO Claims Were Properly Dismissed

The District Court properly granted Appellees' Motion for Partial Judgment on the Pleadings (D194) and dismissed Appellants' RICO and Indiana Corrupt Business Influence Act claims because Appellants did not plead facts that would support the continuity element of such claims. (APX422.) Appellants fail to make any cogent argument that demonstrates that the District Court's decision was in error. Moreover, even if the District Court had committed error, such error would be considered harmless in view of the jury's verdict rejecting Fuller's claims of theft and other wrongdoing (*i.e.*, her related claims that would be the "predicate acts" required by RICO).

### A.    *Standard of Review*

Rulings on motions for judgment on the pleadings are reviewed *de novo*. *Midwest Gas Servs., Inc. v. Ind. Gas Co.,* 317 F.3d 703, 709 (7th Cir. 2003). Such a motion should be granted "if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief. In evaluating the motion, [the Court] accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Id.* (internal citations and quotation marks omitted).

**B.     The District Court's Dismissal of Appellants' RICO Claims Was Proper**

Appellants' RICO and Indiana Corrupt Business Influence Act claims were dismissed because "nothing about the allegations in the amended counterclaim […] suggests that the [alleged criminal enterprise] will move on (or would have moved on, absent this lawsuit) to another scheme when it is finished reaping the benefits of this one." (APX422.) *See Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (internal citation omitted) (the continuity element of a RICO claim requires that "the alleged acts of wrongdoing must not only be related, but . . . must amount to or pose a threat of continued criminal activity."). As explained by the District Court, the Amended Counterclaims were deficient:

> A fair reading of the amended counterclaim is that all of the actions that the Enterprise is alleged to have taken were done in furtherance of or in conjunction with the scheme to take control of the Devotion from Fuller so that they could financially benefit from it. There is nothing about the allegations in the amended counterclaim that suggests that the Enterprise will move on (or would have moved on, absent this lawsuit) to another scheme when it is finished reaping the benefits of this one. Therefore, as in *Gamboa*, the amended counterclaim in this case presents a distinct and non-reoccuring scheme with a built-in termination point and provides no indication that the perpetrators have engaged or will engage in similar misconduct. Therefore, the continuity requirement is not satisfied in this case.

(APX422 (internal citation omitted).)

Appellants do not really address the analysis of the District Court, discuss the relevant law, or provide any explanation that would support their position that the continuity element was properly pled in the Amended Counterclaims. Instead, Appellants simply assert that the District Court's conclusion regarding the continuity

element was in error. Appellants' skeletal argument is simply not sufficient to overcome the District Court's reasoned analysis. *See Bank of America*, 643 F.3d at 190 (citation omitted). As Appellants have failed to make any real effort to present a cogent argument regarding the District Court's conclusion that Appellants did not plead the continuity requirement of a RICO claim in their Amended Complaint, Appellants' skeletal argument on this issue should be disregarded by the Court.

### C.    *Even If There Was Error in Dismissing the RICO Claims, such Error Was Harmless*

Even if the District Court erred in dismissing the RICO claims (it did not), such error would be harmless. In order for there to be RICO liability, there must be at least two predicate acts. *See United States v. Garcia*, 754 F.3d 460, 471 (7th Cir. 2014) ("A RICO conspiracy charge requires proof of two predicate acts, or an agreement to commit those acts, in furtherance of the conspiracy"). In this instance, all of the various predicate acts that were asserted as part of Appellants' RICO claims (*i.e.*, theft, conversion, fraud, copyright infringement, trademark infringement, etc.) were decided emphatically in Appellees' favor, as Fuller recovered no damages on any of her claims. (APX497-536.) Because the jury determined that Appellees did not commit the required two predicate acts that would support RICO liability, the District Court's dismissal would, at worst, be harmless error. *See Robert Suris General Contractor Corp. v. New Metropolitan Federal Sav. & Loan Ass'n*, 873 F.2d 1401, 1406 (11th Cir. 1989) (The court indicated that the denial of discovery on enterprise and motive was harmless error where the appellant failed to show any

predicate acts forming a pattern of racketeering activity because "[e]nterprise and motive without predicate acts do not a RICO violation make").

## V.    The Sanction Imposed Against Cramer Was Not an Abuse of Discretion

Cramer was sanctioned $6,700.00 for her failure "to take the measures that a reasonable attorney would have taken in order to be able to conduct her parts of the trial in an orderly way." (APX624.) Quite frankly, Cramer got off light. Given the egregiousness of her conduct, the sanction could have been much more. Nevertheless, the sanction was not an abuse of discretion.

### A.    *Standard of Review*

A district court's decision whether to grant or deny sanctions is reviewed for abuse of discretion. *Moriarty ex rel. Local Union No. 727 v. Svec*, 429 F.3d 710, 722 (7th Cir. 2005). "When reviewing a district court order for abuse of discretion, the question is not whether this court would order sanctions on the same facts, but whether the district court abused its discretion." *Kotsilieris v. Chalmers*, 966 F.2d 1181 (7th Cir. 1992). Based on this standard, the Court "need only inquire whether any reasonable person could agree with the district court's sanction award." *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir.1989).

### B.    *The Decision to Impose Sanctions against Cramer and the Amount Sanctioned Was Not in Error*

Throughout this case, Cramer's conduct has been egregious, as she continually advanced claims that were not supported by any evidence, made inappropriate allegations of misconduct and personal attacks against Appellees and their counsel (including attacks against their religious faith), made personal attacks against every

witness that testified of Appellees' behalf (including members of the clergy), and repeatedly ignored the Rules and relevant deadlines. (See, for example, D814:17, D831-4, D831-5, D831-6.) After the jury rendered a verdict in Appellees' favor and the Court rendered its judgment, Cramer began attacking the jury, judges, and court reporter, going so far as to refer to the jurors as "eight ignorant jurors who were in such a hurry to just go home that they failed to even fill out all of the verdict forms." (D849-1:10.) All of Cramer's improper conduct caused Appellees to incur fees that they should not have incurred. (See Dkt. 831:10-20.) As such, the $6,700.00 that she was ultimately sanctioned was minute in comparison to the amount she could/should have been sanctioned.

Nevertheless, Appellants assert that the sanction was "nothing short of retaliatory abuse of discretion." (B52.) Appellants make this serious accusation without even addressing the District Court's sound reasoning for imposing the sanction. Specifically, in order to ensure an orderly trial, the District Court "instructed counsel to provide to the Court and opposing counsel each evening at the close of the day copies of the exhibits they expected to offer the following day. Each morning at 8:00 a.m., the Court and counsel met to review the exhibits and resolve any objections thereto before the jury arrived at 9:00 a.m." (APX620.) Appellees' counsel faithfully adhered to these procedures, which worked very well with regard to the Appellees' exhibits. (*Id.*) However, while Appellants never raised any objection to these procedures, Cramer repeatedly failed to adhere to the procedures and was admonished by the District Court for her failures. (APX620-624.) As noted by the

District Court, "Ms. Cramer's failure properly to analyze and organize her case in advance of trial so that she could follow the Court's protocol with regard to exhibits, as well as her repeated tardiness, directly increased [Appellees'] costs during the trial." (APX623.) Because "Ms. Cramer simply failed to take the measures that a reasonable attorney would have taken in order to be able to conduct her parts of the trial in an orderly way," the District Court sanctioned her under 28 U.S.C. § 1927. (APX624.)

Appellants offer no real counter to this analysis. Instead, they simply assert that the District Court was biased and accuse it of ignoring Appellees' alleged misconduct. (B54.) There is absolutely no evidence that supports this callous allegation of misconduct, nor is there any evidence of bias on the part of the District Court. Quite the opposite; if anything, the District Court let Cramer off light.

The only legal argument advanced by Appellants in their brief is that it was improper for the District Court to sanction Cramer when there was no evidence that she acted in bad faith. However, 28 U.S.C. § 1927 does not require "bad faith."[20] Rather, sanctions are appropriate if an attorney "has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice . . . ." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 708 (7th Cir. 2014) (internal quotation marks and citations omitted). The facts outlined in the

---

[20] Appellants also make the rather curious argument that "[i]t makes no sense for [Cramer] to pay opposing counsel when if they had indeed incurred the extra hours, they would have already been paid by their own clients." (B54.) This argument is nonsense. Cramer is not paying Appellees' counsel; she is reimbursing Appellees for fees they incurred as the result of her unreasonable conduct.

District Court's Order (APX606-625), demonstrate that Cramer's conduct was objectively unreasonable and worthy of sanctions.

## <u>CONCLUSION</u>

For the foregoing reasons, the District Court's judgment on the jury verdict and other rulings should be affirmed.

Respectfully submitted,

/s/ *Bradley M. Stohry*

| | |
|---|---|
| Michael A. Swift | Bradley M. Stohry |
| MAGINOT MOORE & BECK, LLP | REICHEL STOHRY LLP |
| One Indiana Square, Suite 2200 | 212 West 10th Street, Suite D-280 |
| Indianapolis, IN 46204 | Indianapolis, IN 46202 |
| Tel: (317) 638-2922 | (317) 423-8820 |
| maswift@maginot.com | brad@rsindy.com |

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 (Version 14.0.7151.5001) word processing software in Century typeface, 12 point font (11 point for footnotes).


/s/ *Bradley M. Stohry*
Bradley M. Stohry

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of July, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF System.

I further certify that one of the participants in the case is not a CM/ECF user. I have mailed the foregoing documents by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participant:

Larry Young
P.O. Box 996
Kildeer, IL 60047


/s/ *Bradley M. Stohry*
Bradley M. Stohry